KAB

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Preston Seidner,

              Plaintiff,

v.

Devries, et al.,

              Defendants.

No. CV 19-05394-PHX-DLR (DMF)

**ORDER**

Plaintiff Preston Seidner, who is currently confined in the Arizona State Prison Complex-Yuma, brought this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 7.) Defendant Johnathan de Vries moves for summary judgment, and Plaintiff opposes.[1] (Docs. 14, 21.)

**I.     Background**

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated a Fourth Amendment excessive force claim against Defendant de Vries, a Mesa police officer. (Doc. 8.)

**II.    Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) regarding the requirements of a response. (Doc. 17.)

movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**III.   Facts**

In this case, there is video footage of the incident giving rise to Plaintiff's excessive force claim. (*See* Doc. 19.) The Court considers the facts in the light depicted by the video, but still draws all inferences from the video in Plaintiff's favor. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (a court may properly consider video evidence in ruling on a motion for summary judgment and should view the facts "in the light depicted by the videotape"); *Williams v. Las Vegas Metro. Police Dep't*, No. 2:13-CV-1340-GMN-NJK,

2016 WL 1169447, at *4 (D. Nev. Mar. 22, 2016) ("[t]he existence of the video does not change the usual rules of summary judgment: in general, the court will draw all reasonable inferences from the video in plaintiff's favor") (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 468 n.1 (9th Cir. 2007)).]

### A. Plaintiff's Version[2]

In his First Amended Complaint, Plaintiff alleged that on February 25, 2019, he was riding his bike when Defendant "attempted to pull [him] over for a traffic stop for failure to have bike lights on [his] bike," and Defendant "cut [Plaintiff] off at a high rate of speed causing [him] to crash[] into [the] police SUV violently." (Doc. 7 at 3.) Plaintiff further alleged that, while handcuffed, Defendant dragged Plaintiff's body from the street to the sidewalk and dropped him. Plaintiff alleges that he suffered injuries to his head, wrist, and chest. (*Id.*)

### B. Defendant's Version

On the night of February 25, 2020, Defendant was on patrol in Mesa, Arizona. (Doc. 15 ¶ 2.) At approximately 11:30 p.m., Defendant came across Plaintiff, who was riding his bicycle in the road. (*Id.*) Defendant noticed that Plaintiff was riding his bicycle at night without any headlights in violation of Arizona law. (*Id.* ¶ 4.) Defendant then pulled ahead of Plaintiff and observed in his rearview mirror that Plaintiff's bicycle did in fact not have the proper lighting equipment. (*Id.* ¶ 5.)

While still in front of Plaintiff, Defendant activated his rooftop lights[3] in an attempt to pull over Plaintiff for riding his bicycle without the proper lighting equipment. (*Id.* ¶ 6.) Shortly after Defendant activated his rooftop lights, Plaintiff quickly pedaled away on his

---

[2] The Court will construe Plaintiff's verified Complaint as an affidavit in opposition to the summary judgment motion. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (allegations in a pro se plaintiff's verified pleadings must be considered as evidence in opposition to summary judgment); *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (verified complaint may be used as an affidavit opposing summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence).

[3] Based on the video of the incident, Defendant did not activate his siren. (Doc. 19.)

- 3 -

bicycle, at which point Defendant proceeded to chase Plaintiff in his squad car. (*Id.* ¶ 7.) After chasing Plaintiff for about 10 to 15 seconds, Defendant accelerated ahead of Plaintiff and came to a stop in the middle of the road, leaving approximately 30 feet of space between his vehicle and Plaintiff. (*Id.* ¶ 8.)[4] As Defendant exited his vehicle, he heard a loud thud from the rear of his vehicle. (*Id.* ¶ 9.) Once he exited his vehicle, Defendant realized Plaintiff had crashed into the back of his squad car. (*Id.* ¶ 10.) Defendant handcuffed Plaintiff and waited for backup to arrive.[5] (*Id.* ¶ 11.) Plaintiff told Defendant that he did not have working brakes on his bicycle. (*Id.* ¶ 12.)

**IV.    Discussion**

Defendant argues that he is entitled to summary judgment on Plaintiff's excessive force claim because (1) he never "seized" Plaintiff within the meaning of the Fourth Amendment, (2) even if he seized Plaintiff, the seizure was objectively reasonable, and (3) even if he unreasonably seized Plaintiff, it was not clearly established that his conduct was unlawful, entitling him to qualified immunity.

**A.    Whether Plaintiff was "Seized" by Defendant**

Defendant first argues that he did not intend for Plaintiff to hit his vehicle and asserts that the crash was "accidental" and not a "seizure" within the meaning of the Fourth Amendment.

"Violation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking." *See Brower v. County of Inyo*, 489 U.S. 593, 596 (1989). When a police officer restrains the freedom of a person to walk away, that is a seizure. *Id.* at 595.

---

[4] It is not clear from the video how far Defendant was from Plaintiff when he stopped his vehicle, but a loud thud is heard almost immediately after Defendant stopped his car. Plaintiff disputes the distance between the bicycle and patrol car. (Doc. 21 at 2 ¶ 4.)

[5] Although Defendant asserts that he checked Plaintiff for injuries prior to handcuffing him, this is not reflected in the video. (Doc. 19.) Defendant does ask Plaintiff about injuries after Defendant handcuffed Plaintiff and put him into a sitting position. (*Id.*)

- 4 -

For example, a seizure does not occur when a "parked and unoccupied police car slips its brakes and pins a passerby against a wall." *Id.* at 596.

Here, Defendant pulled his car into the middle of the road that Plaintiff was travelling on in order to effectuate a roadblock to stop Plaintiff from fleeing from him. Plaintiff was travelling at a high rate of speed on his bicycle, and it is apparent from the video that Plaintiff was provided little time to stop given the time between Defendant stopping his car and the time the sound of the thud is heard on the video. (Doc. 19.) Even assuming Defendant did not intend Plaintiff to crash into the vehicle, he meant for Plaintiff to stop by effectuating a roadblock with his car.[6]

Contrary to Defendant's arguments, this is not the type of "accident" that the Supreme Court has held is outside the meaning of "seizure" within the context of the Fourth Amendment. *See Brower*, 489 U.S. at 598 (a "roadblock is not just a significant show of authority to induce a voluntary stop, but is designed to produce a stop by physical impact if voluntary compliance does not occur. It may well be that respondents here preferred, and indeed earnestly hoped, that [decedent] would stop on his own, without striking the barrier, but we do not think it practicable to conduct such an inquiry into subjective intent."). Accordingly, Defendant seized Plaintiff within the meaning of the Fourth Amendment.

### B. Qualified Immunity

A defendant is entitled to qualified immunity if his or her conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When deciding if qualified immunity applies, the Court must determine: (1) whether the facts alleged show that the defendant's conduct violated a constitutional right; and (2) whether that right was clearly

---

[6] Although Defendant repeatedly argues that he did not intend for Plaintiff to crash into his vehicle, he also argues that "[t]he only reasonably safe way to stop the suspect is to pull ahead, stop, and have the suspect crash into you." (Doc. 14 at 8.) This is a direct contradiction to Defendant's other statements. Regardless, Defendant's subjective intent is irrelevant to whether his actions were objectively reasonable under the circumstances.

- 5 -

established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 230-32, 235-36 (2009) (courts may address either prong first depending on the circumstances in the particular case). In this analysis, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

### 1. Constitutional Violation

Defendant argues that his actions were not unconstitutionally excessive because he did not "intend" for Plaintiff to crash into his vehicle, and because there are not many other alternatives to stop a fleeing bicyclist.

A claim that law enforcement officers have used excessive force in the course of an arrest should be analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The reasonableness of the use of force "must be judged from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. When determining whether the totality of the circumstances justifies the degree of force, the court must consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citations omitted). Not every push or shove, even if it may later seem unnecessary, violates the Fourth Amendment. *Forrester v. City of San Diego*, 25 F.3d 804, 810 (9th Cir. 1994).

### i. The Severity of the Crime at Issue

Plaintiff had committed no crime at the time Defendant attempted to stop him. Rather, Defendant presumably wanted to issue Plaintiff a traffic citation for riding his bicycle without a headlight in a well-lit area. Accordingly, this factor weighs in favor of Plaintiff.

          **ii.**     **Whether Plaintiff Posed an Immediate Threat to the Safety of the Officers or Others**

"The most important *Graham* factor is whether the suspect posed an immediate threat to anyone's safety." *S.R. Nehad v. Browder*, 929 F.3d 1125, 1132-33 (9th Cir. 2019). There is simply no evidence in this record that Plaintiff posed any threat to Defendant or to others. Defendant suspected Plaintiff of riding his bike without a headlight in a well-lit area, a civil traffic violation. Although Plaintiff rode away from Defendant's vehicle, there is no evidence that he posed any threat by that action. Accordingly, the most important *Graham* factor weighs in favor of Plaintiff.

          **iii.**    **Whether Plaintiff was Actively Resisting Arrest or Attempting to Evade Arrest by Flight**

When the individual is "not perfectly passive," but his resistance is "not particularly bellicose," the third *Graham* factor offers "little support for the use of force." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1091–92 (9th Cir. 2013). In the video, Plaintiff is riding up the street and does not appear to be attempting to flee into an area that Defendant could not access with his car. Although Plaintiff was purportedly fleeing and thus was not engaged in "mere passive resistance," this factor does not support Defendant because Plaintiff's flight on a bicycle was not bellicose, it was not apparent that Plaintiff could easily get away, and Defendant did not offer any warning other than turning the lights on his patrol vehicle.

          **iv.**    **Conclusion**

Here, a reasonable jury could find that Defendant's use of force was excessive. Although Defendant repeatedly argues that he did not subjectively intend for Plaintiff to hit his car, the Court does not examine Defendant's subjective intent when determining whether force was reasonable. Moreover, there is a disputed issue of fact as to whether Defendant gave Plaintiff enough time to stop his bicycle even assuming his bicycle had working brakes. Further, Defendant did not use his siren, did not attempt to warn Plaintiff, and did not attempt to make any other type of attempt to stop Plaintiff before erecting a roadblock in Plaintiff's path. For the foregoing reasons, there are disputed issues of

material fact as to whether Defendant violated Plaintiff's Fourth Amendment right to be free from the use of excessive force.

### 2. Clearly Established

Defendant next argues that the law was not clearly established that he could not use excessive force on Plaintiff.

The law is not that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful," but rather, "that in the light of pre-existing law, the unlawfulness must be apparent." *Hardwick v. Cty. of Orange*, 844 F.3d 1112, 1117 (9th Cir. 2017) (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "Furthermore, 'general statements of the law are not inherently incapable of giving fair and clear warning, and in [some] instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful.'" *Hardwick*, 844 F.3d at 1117 (quoting *Hope*, 536 U.S. at 741); *Kisela v. Hughes*, ___ U.S.___, 138 S. Ct. 1148, 1153 (2018) ("general statements of the law are not inherently incapable of giving fair and clear warning to officers.") (quotation omitted).

Here, *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) is instructive. In *Brower*, the Supreme Court stated "a roadblock is not just a significant show of authority to induce a voluntary stop, but is designed to produce a stop by physical impact if voluntary compliance does not occur." 489 U.S. at 598. The Supreme Court further noted that regardless of the officer's subjective intent, if the roadblock was set up in such a way that it was not reasonable for the suspect to "voluntarily stop at the roadblock," such conduct would support a claim of excessive force. *Id.*

Here, *Brower* gives notice that unreasonably erecting a roadblock in a way that is likely to cause a crash would support a claim for excessive force. Accordingly, construing the facts in the light most favorable to Plaintiff, the law was clearly established at the time of Defendant's actions that his conduct could constitute excessive force. *See also Gonzales v. San Jose*, No. 19-cv-08195-NC, 2020 WL 5407993, at *5-6 (N.D. Cal. Sept. 9, 2020)

(stating that in 2019, it was clearly established that vehicles can be used as a deadly weapon and striking someone with a vehicle could inflict deadly force and that an officer may only use deadly force to apprehend a fleeing suspect when the officer has probable cause to believe that the suspect poses a threat of physical harm to himself or others) (citing Ninth Circuit Court of Appeals and Supreme Court cases).

### C.  Conclusion

For the foregoing reasons, there are disputed issues of material fact as to whether Defendant used excessive force and, as a result, Defendant's Motion for Summary Judgment will be denied.

**IT IS ORDERED:**

(1)  The reference to the Magistrate Judge is withdrawn as to Defendant's Motion for Summary Judgment (Doc. 14).

(2)  Defendant's Motion for Summary Judgment (Doc. 14) is **denied**.

(3)  This action is referred to Magistrate Judge Michael T. Morrissey to conduct a settlement conference.

(4)  Defense Counsel shall arrange for the relevant parties to jointly call Magistrate Judge Morrissey's chambers at (602) 322-7680 within 14 days to schedule a date for the settlement conference.

Dated this 12th day of November, 2020.

Douglas L. Rayes
United States District Judge